

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00045-CV

_____


IN THE INTEREST OF J.R., A CHILD



On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 16-0935



Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

While Marshall police officers were investigating a complaint about an unidentified person with a firearm, J.R.'s mother, Lacey,[1] told Officer Courtney Wells that she had been sexually molesting the five children that resided in her home. Consequently, the Texas Department of Family and Protective Services (TDFPS) sought to terminate Lacey's parental rights to J.R. After a Harrison County jury found grounds for termination of Lacey's parental rights and that termination was in the best interest of J.R., the trial court entered its order terminating her parental rights. In this appeal, Lacey contends that she was denied her right to effective assistance of counsel. Lacey does not challenge the sufficiency of the evidence to support the jury's findings. Since we find that Lacey has not shown ineffective assistance of counsel, we will affirm the judgment of the trial court.

## I.    Background

At trial, the evidence showed that, while Marshall police officers were investigating a complaint about a person with a firearm, Lacey told Wells that she had been sexually molesting the five children that resided in her home. When asked what she meant, Lacey told Wells that she sucked the boys' penises and "fingered" the little girls. She also told Wells that she and a male, Jamal, had been planning for several weeks to murder her live-in boyfriend, Gabe, and the five children. Later that morning, Lacey was interviewed by Detective Rob Farnham of the Marshall Police Department. In her recorded statement, Lacey gave fuller details as to the extent of sexual

---

[1]We will refer to appellant as "Lacey," the child at issue in this case as "J.R.," all other children by their initials, and other members of the child's family by pseudonyms in accordance with Rule 9.8 of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 9.8.

abuse of her two sons, J.R. and B.P., and of Gabe's children, A.V., G.V., and Am.V. She further claimed that a past boyfriend and Jamal had also molested the children. In her statement, Lacey said that she smokes crack and that she had smoked crack with Jamal about fifteen hours before her interview. Farnham testified that in searching Lacey's apartment, the police found handwritten journals that corroborated her story. In addition, testimony showed that two of the children made outcry statements at the Children's Advocacy Center (the CAC).

Since the grounds for termination were based primarily on Lacey's statements regarding her sexual abuse of the children, her trial counsel sought to challenge the reliability of her statements. In counsel's cross examination of Farnham and other officers, evidence was elicited that the police could not verify many of the details of Lacey's statement. For instance, the police could never verify the identity or existence of Jamal, and the police cleared all of the people that Lacey had said also molested the children. In addition, Lacey's trial counsel sought to show that she was the victim of emotional battering by Gabe and that she may have been lying to protect him. Her trial counsel was able to obtain agreement from several of the TDFPS's witnesses that battered women will lie for their batterer and that some of the actions exhibited by Gabe, such as never allowing Lacey to be alone, handcuffing her, jealousy, and yelling and screaming, can be signs of battering.

Lacey's trial counsel also called witnesses in her defense. Gabe's sister, Guadalupe, testified that Gabe liked to brainwash and control women, that he was jealous, and that he would not let Lacey leave the house by herself. She also testified that Gabe had accused several people

3

of molesting children and that she believed Gabe manufactured the story about Lacey molesting the children.

From Lacey's sister, Amy, testimony was elicited that B.P., who had made an outcry statement at the CAC, told her that he did not see a black man or know that Lacey molested him, but that Gabe had told him that they had done this to him while he was asleep. She said that he denied experiencing any molestation or seeing Lacey without clothes on or having sex, but that Gabe told him that it happened. Amy also testified that she believed Gabe brainwashed Lacey while she was under the influence of drugs to say she abused the children and tried to kill them. In addition, Lacey's trial counsel sought to put on the testimony of B.P., who was six years old at the time of trial, but after examining him, the trial court found him incompetent to testify.

## II.    Standard of Review

When termination of parental rights is sought by TDFPS, the Texas Family Code requires the trial court to appoint counsel for an indigent parent who opposes the termination. TEX. FAM. CODE ANN. § 107.013(a)(1) (West Supp. 2016); *In re A.M.M.*, No. 06-05-00039-CV, 2006 WL 42229, at *6 (Tex. App.—Texarkana Jan. 10, 2006, no pet.) (mem. op.). This statutory right to counsel includes the right to effective counsel. *In re K.S.*, 420 S.W.3d 852, 856 (Tex. App.—Texarkana 2014, no pet.); *A.M.M.*, 2006 WL 42229, at *6 (citing *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003)). In parental rights termination cases, Texas courts apply the standard set forth in *Strickland v. Washington* to determine whether counsel is effective. *K.S.*, 420 S.W.3d at 856 (citing *In re J.O.A.*, 283 S.W.3d 336, 341–42 (Tex. 2009); *In re M.S.*, 115 S.W.3d 534, 544–45 (Tex. 2003) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). To prevail on an ineffective

assistance of counsel claim, the appellant must make two showings:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by [Texas law]. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

When considering the first prong, we "take into account all of the circumstances surrounding the case, and . . . primarily focus on whether counsel performed in a 'reasonably effective' manner." *In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003)(quoting *Strickland*, 466 U.S. at 687). We "give great deference to counsel's performance, indulging 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's actions are strategic." *Id.* (quoting *Strickland*, 466 U.S. at 689; *Garcia v. State,* 57 S.W.3d 436, 440–41 (Tex. Crim. App. 2001)). The challenged conduct will be found to be ineffective assistance "only when 'the conduct was so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Garcia*, 57 S.W.3d at 440; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

The second *Strickland* prong requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id*. To establish this prong, the appellant must show "that counsel's errors were so serious as to deprive [her] of a fair trial, a trial whose result is reliable." *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (quoting *Strickland*, 466 U.S. at

687). A showing "that the errors had some conceivable effect on the outcome of the proceeding" is not sufficient. *Id.* (quoting *Strickland*, 466 U.S. at 693). Rather, the appellant must show that, absent the errors, there is a reasonable probability that the outcome would have been different. *Id.* (citing *Strickland*, 466 U.S. at 695).

The appellant "has the burden to prove ineffective assistance of counsel by a preponderance of the evidence." *Id.* (citing *Thompson*, 9 S.W.3d at 813). Further, allegations of ineffectiveness "must 'be firmly founded in the record.'" *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (quoting *Thompson*, 9 S.W.3d at 813). A failure to make a showing under either prong defeats a claim for ineffective assistance. *See M.S.*, 115 S.W.3d at 545.

## III.    Analysis

In her sole point of error, Lacey contends that she was deprived of her right to effective assistance of counsel. In her brief, Lacey lists eighteen instances that she contends show her trial counsel was ineffective. These alleged errors of trial counsel included that she "ran out of time during voir dire and failed to request additional time," that she "raised an inarticulate *Batson* challenge to a stricken juror," that she failed to adequately and timely conduct discovery, that she failed to lay a proper predicate for the admissibility of certain documents on four different occasions,[2] that she "did not make an articulate objection" on seven separate occasions, that she "opened the door to hearsay statements of a child," that she failed to qualify a child witness, that she failed to preserve the testimony of a witness, and that she failed to object to the charge of the court. Lacey does not cite to any authority holding that any of the complained-of instances are

---

[2]These four instances were attempts to introduce the same document through different witnesses.

6

evidence of ineffective assistance of counsel. *See In re R.E.T.R.*, No. 14-13-00640-CV, 2013 WL 6506689, at \*11 (Tex. App.—Houston [14th Dist.] Dec. 10, 2013, no pet.) (mem. op.).

Furthermore, for fifteen of these instances, Lacey merely makes conclusory statements alleging that errors were made with a citation to the record. Lacey makes no argument that the trial court would have granted her trial counsel more time for voir dire if she would have asked, or that the trial court's ruling would have been different if a proper objection had been made, and she offers no analysis showing that the trial court incorrectly excluded the documents. Also, Lacey does not point to any portion of the court's charge that she contends is objectionable. Finally, other than the conclusory statement that, because of these alleged errors "there is a reasonable probability that the outcome would have been different," Lacey does not provide any substantive analysis or showing of how these alleged errors would have affected the jury's findings that grounds for termination of Lacey's parental rights existed and that termination was in the best interest of J.R.

An appellant's brief is required to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). This requirement cannot be satisfied by conclusory statements, unsupported by citation to appropriate legal authority. *In re Estate of Taylor*, 305 S.W.3d 829, 836 (Tex. App.—Texarkana 2010, no pet.); *Betts v. Cty. of Freestone*, No. 10-09-00220-CV, 2011 WL 2480007, at \*2 (Tex. App.—Waco June 22, 2011, no pet.) (mem. op.). Further, "[f]ailure to cite legal authority or to provide substantive analysis of the legal issues results in waiver of the complaint." *Taylor*, 305 S.W.3d at

7

36 (citing *Martinez v. El Paso Cty.*, 218 S.W.3d 841, 844 (Tex. App.—El Paso 2007, pet. struck); *Betts*, 2011 WL 2480007, at \*2.

Moreover, "[A]n appellate court has no duty to perform an independent review of the record and applicable law to determine whether there was error." *Taylor*, 305 S.W.3d at 837 (citing *Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied)); *Harkins v. Dever Nursing Home*, 999 S.W.2d 571, 573 (Tex. App.—Houston [14th Dist.] 1999, no pet.). If we did so, we would abandon our role as a neutral adjudicator and become an advocate for the appellant. *Taylor*, 305 S.W.3d at 837 (citing *Plummer v. Reeves*, 93 S.W.3d 930, 931 (Tex. App.—Amarillo 2003, pet. denied)). Because Lacey has failed to provide any substantive legal analysis or citation to proper legal authority for fifteen of the alleged errors of trial counsel, she has waived her complaint regarding the same. However, Lacey does provide some argument regarding her complaints that her trial counsel failed to adequately and timely conduct discovery and that she failed to qualify a child witness and failed to preserve his testimony.

Regarding her failure to obtain discovery, Lacey argues that trial counsel failed to timely file her discovery requests and that, therefore, this Court is unable to tell the extent to which she could have been prejudiced. First, we note that it is Lacey's burden to bring forth an appellate record that demonstrates by a preponderance of the evidence that, absent the errors of her trial counsel, there is a reasonable probability that the outcome of the trial would have been different. *See Martinez*, 330 S.W.3d at 901. At her hearing on her motion for new trial, Lacey made no showing of what type of evidence she might have sought to obtain through discovery.

8

Neither has she made this showing in this Court. To the contrary, the testimony at the new trial hearing showed that her trial counsel obtained an order from the trial court requiring the State to allow her to review its file and to provide her with its list of witnesses. In addition, testimony showed that her trial counsel obtained all of the discovery produced in her criminal proceedings from the attorney representing Lacey in those matters. This discovery included copies of all video recordings provided by the State. Without a showing of what other evidence may have been discovered, and no showing of how it would have, in reasonable probability, affected the jury's verdict, Lacey has failed to show by a preponderance of the evidence that her trial counsel's performance was ineffective. *See M.S.*, 115 S.W.3d at 545.

Lacey also faults her trial counsel for failing to rehabilitate her proffered six-year-old witness, B.P., after the trial court found him incompetent to testify, and in failing to preserve B.P.'s testimony. However, Amy testified at trial that B.P., who had made an outcry statement at the CAC, told her that he did not see a black man or know that Lacey molested him, but that Gabe had told him that they had done this to him while he was asleep. She also testified that B.P. denied experiencing any molestation or seeing Lacey without clothes on or having sex, but that Gabe told him that these things happened. Other than corroborating this testimony by Amy, Lacey has made no showing what additional testimony B.P. would have provided or that, if it had been provided, it would, in reasonable probability, have affected the outcome of the trial.

As seen above, Lacey's trial counsel sought to discredit her confessions and explain them, both on cross-examination of TDFPS's witnesses and on direct examination of her witnesses, as springing from the emotional battering and manipulation of her boyfriend, Gabe. Although during

9

the course of the proceedings she may have taken some actions which some might argue are mistakes, our review of the entire record does not show that her conduct was "outrageous," nor does the record affirmatively show a reasonable probability that, but for her trial counsel's errors, the outcome would have been different. *See id.*; *Martinez*, 330 S.W.3d at 901.

For the reasons stated above, we affirm the judgment of the trial court.


Ralph K. Burgess
Justice


Date Submitted:     July 6, 2017
Date Decided:      July 19, 2017

10